1 Stephen R. Basser
2 sbasser@barrack.com
  Samuel M. Ward
3 sward@barrack.com
  **BARRACK RODOS & BACINE**
4 One America Plaza
  600 West Broadway, Suite 900
5 San Diego, CA 92101
  Telephone: (619) 230-0800
6 Facsimile: (619) 230-1874

7 Counsel for Plaintiff *Nathan Jackson* and the Proposed Classes

8
  Additional Counsel listed on Signature Page
9
10                UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | NATHAN JACKSON, on behalf of himself and all others similarly situated, | Case No. |
13 | | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
   | Plaintiff, | |
14 | | |
   | v. | |
15 | | |
16 | WESTERN DIGITAL CORPORATION; WESTERN DIGITAL TECHNOLOGIES, INC.; and SANDISK, LLC, | |
17 | | |
   | Defendants | |
18

19
20       Plaintiff Nathan Jackson ("Jackson" or "Plaintiff"), on behalf of himself and all others
21 similarly situated, hereby files this class action complaint against defendants Western Digital
22 Corporation ("Western Digital"); Western Digital Technologies, Inc.; and SanDisk, LLC
23 ("SanDisk") (collectively "Defendants"). Plaintiff alleges as follows on information and belief,
24 except for allegations specific to Plaintiff, which are alleged based on personal knowledge.

25
26
27
28
                                    1

## SUMMARY OF THE ACTION

1.    Western Digital Corporation, incorporated in California and headquartered in San Jose, California, designs, manufactures, markets, and sells a variety of computer storage devices, including solid state hard drives.  In 2016, Western Digital acquired SanDisk Corporation, which then manufactured, marketed and sold various flash memory and solid state storage devices ("SSDs"). Western Digital continues to design, manufacture, market, and sell a variety of storage devices through the SanDisk, LLC subsidiary as well as its Western Digital, Inc., subsidiary. Included among Western Digital's products are a series of storage devices based on solid state drives. This action is brought on behalf of purchasers of certain SSDs, including 500 gigabyte, 1 terabyte, 2 terabyte, and 4 terabyte versions of the SanDisk Extreme Pro, Extreme Portable, Extreme Pro Portable, and Western Digital MyPassport SSD (collectively the "Defective Drives"). SSDs are generally known to be more reliable, more durable, and faster than traditional hard disks. Indeed, Defendant specifically market's the Defective Drives as such, claiming, *inter alia*, that they are "Fast and Dependable," "reliable enough to take on any adventure," "Tough Enough to Take With You," "TAKING DURABILITY TO GREATER HEIGHTS," allowing users to "[c]arry your data with confidence." [1,2].

2.    In truth, the Defective Drives are plagued with a defect that causes them to disconnect from their host computer without warning or otherwise become unreadable (the "Defect"). The Defect can result in, *inter alia*, data loss, inaccessible drives, and computer crashes. Consumers who paid for fast reliable storage are instead left with unstable, untrustworthy storage that is not useable for the purpose for which it was marketed to consumers and class members.

3.    Despite knowing of the Defect, Defendant continues to market the Defective Drives widely, selling them on websites such as Amazon.com and through brick and mortar retailers such as Best Buy.

---

[1] https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25, last visited on September 8, 2023.

[2] https://www.westerndigital.com/products/portable-drives/wd-my-passport-usb-3-2-ssd#WDBAGF5000ABL-WESN, last visited on September 8, 2023.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

5.      This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California, such that Defendants has significant, continuous, and pervasive contacts with the State of California. Additionally, each of Defendants' principal places of business are in this District.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District (e.g., the design, marketing, and research regarding the Defective Drives), and Defendants' principal places of business are in this District.

## PARTIES

7.      Plaintiff Nathan Jackson is, and at all times relevant was, a citizen of the state of Texas, residing in McLennan County. Plaintiff Jackson purchased a SanDisk Extreme for $199.99 on or about August 2, 2022, from Amazon.com. Within a month of Plaintiff Jackson's purchase, the SanDisk Extreme lost functionality and Plaintiff Jackson was unable to access photos, videos, and other documents that he had stored on the drive. Plaintiff Jackson's drive is now useless as Plaintiff Jackson cannot access data stored on it, nor can he use it as intended. In deciding to purchase the drive, Plaintiff Jackson relied on the reputation of SanDisk as well as the reputation of SSDs as being capable of safely and reliably storing data.

8.      Defendant Western Digital Corporation maintains its headquarters at 5601 Great Oaks Parkway, San Jose, California, and is incorporated under the laws of the state of Delaware. Western Digital Corporation is the parent company of Western Digital Technologies, Inc. and

CLASS ACTION COMPLAINT

SanDisk, LLC. Western Digital Corporation markets the Defective Disks directly through its website, www.westerndigital.com.

9.     Defendant SanDisk LLC is a business incorporated under the laws of the state of Delaware with its principal place of business at 951 SanDisk Drive, Milpitas, CA. SanDisk markets, manufactures, and sells digital storage technology, including SSDs.

10.     Defendant Western Digital Technologies, Inc. is a business incorporated under the laws of the state of Delaware with its principal place of business at 5601 Great Oaks Parkway, San Jose, CA. Western Digital Technologies, Inc. is the seller of record and licensee in the Americas of SanDisk products.

## FACTUAL ALLEGATIONS

**The Defect**

11.     Defendants design, manufacture, market and sell a variety of digital storage devices, including SSDs.

12.     SSDs are increasingly the computer storage medium of choice for consumers. SSDs function by storing data in semiconductor cells. Traditional magnetic hard disk drives rely on magnetic disks that spin at a high rate of speed and are subject to damage from shocks or falls. In comparison to hard disk drives SSDs are typically more resistant to physical shock, run silently, and operate at higher speed. As a result, SSDs are generally known to be more reliable, more durable, and faster than traditional hard disks. Indeed, Defendant specifically market's the Defective Drives as such, claiming, *inter alia*, that they are "Fast and Dependable," "reliable enough to take on any adventure," "Tough Enough to Take With You," "TAKING DURABILITY TO GREATER HEIGHTS," allowing users to "[c]arry your data with confidence." [3,4].

---

[3] https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25, last visited on September 12, 2023.
[4] https://www.westerndigital.com/products/portable-drives/wd-my-passport-usb-3-2-ssd#WDBAGF5000ABL-WESN, last visited on September 12, 2023.

CLASS ACTION COMPLAINT

13.     This action is brought on behalf of purchasers of certain SSDs, including the Defective Drives, the 500 gigabyte, 1 terabyte, 2 terabyte, and 4 terabyte versions of the SanDisk Extreme Pro, Extreme Portable, Extreme Pro Portable, and Western Digital MyPassport SSD.

14.     In truth, the Defective Drives are plagued with a defect that causes them to disconnect from their host computer without warning or otherwise become unreadable (the "Defect"). The Defect can result in, *inter alia*, data loss, inaccessible drives, and computer crashes. Consumers who paid for fast reliable storage are instead left with unstable, untrustworthy storage that is not useable for the purpose for which it was marketed to consumers and class members.

**Defendants Have Long Been Aware Of the Defect**

15.     Defendants have long been aware of complaints regarding the Defect. Complaints about the Defect were widespread, posted on Defendants' website, retailer websites, Reddit.com, and described in articles published on the internet.

16.     Reviews of the Defective Drives posted on retailer websites and on Defendants' own website have long highlighted the Defect.

17.     A review posted on Western Digital's website, www.westerndigital.com, in or about October 2022 rated the SanDisk Extreme Pro 2TB SSD with one star, stating that:[5]

> Bought two of those, same type, 2GB. Both don't want to work, either saying they are write protected or if you try it on Mac they say they are unreadable and cannot be formatted. What are the odds? But with much better odds I can expect that Will from SanDisk® Global Support Team will assure me that all of SanDisk® products are manufactured on strong hardware platform to sustain daily usage.

18.     Another complaint, posted to Western Digital's website in or about March 2023, highlighted consumer reliance on Defendants' reputation:

---

[5] https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25, last visited on September 12, 2023.

CLASS ACTION COMPLAINT

I chose the SanDisk Extreme Pro V2 drive based no [sic] the company reputation but I should have heavily weighted the negative reviews on reliability issues as part of my decision. The first drive became unreadable after about 3 days. The drive was reformatted and back to use but failed again after a day. The defective drive was exchanged for a new drive. The new initially seemed to be working better because it worked for 5 days before becoming unreadable. The 2nd drive was reformatted and worked for 3 days. I wish I could return the 2nd drive for a refund because there has been too much time wasted trying to make the drives work successfully and reliably.

*Id.*

19.     A review posted in or about February 2023 on the website for retailer Best Buy described the SanDisk Extreme Portable 4TB SSD as "the worst ssd I've ever had to deal with. If you are a Mac user, don't purchase this trash ssd. It's not compatible. Randomly deletes data and unmounts itself. You can't re mount it no matter what without reformatting and losing all your data. I thought I had a defect but the second replacement has the same issues."[6] Similarly, a review posted in or about March 2023 stated that the consumer "[b]ought this item 36 days ago... item has failed and I lost about 3T worth of work. Best Buy doesn't take returns after 15 days and Western Digital (who own SanDisk) only warranties their product for 30 days. Now I see why.  $330 down the drain!! DON'T BUY!!" *Id.*

20.     Similarly, in a February 3, 2023 post on Reddit.com, titled "A Warning About SanDisk Extreme Pro SSDs," a Reddit Contributor warned fellow users of SanDisk Extreme Pro SSDs that:[7]

Multiple DITs/Loaders/ACs on both coasts have experienced the exact same failure with these drives over the last month.The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot wether [sic] you can recover it or not. The primary way you will see this is that the drive will unmount and you will not be able

---

[6] https://www.bestbuy.com/site/reviews/sandisk-extreme-portable-4tb-external-usb-c-nvme-ssd-black/6472036?variant=A&skuId=6472036&rating=1&sort=OLDEST, last visited on September 12, 2023.

[7] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/ (last visited on September 12, 2023).

CLASS ACTION COMPLAINT

to get it to mount again, despite showing up in Disk Utility. You can sometimes recover it using DiskDrill's filesystem rebuild, but occasionally that does nothing. It persists with any filesystem type.

21.   The author of the Reddit post noted Defendants' knowledge of the issue, stating that "[a] few of us are working with a colleague at SanDisk to try and get this addressed . . . ." *Id.* However, it appears there was resistance from Defendants as the author further stated that "we're collecting data to prove to SanDisk that it actually is more than a fluke." *Id.* That post garnered more than 280 comments, with many users noting similar problems. Indeed, the first Reddit user to respond to the post stated that "[t] his happened to me earlier this week. I posted a story about it on instagram and 9 different people responded experiencing the same issue within the last month." *Id.*

22.   By May 2023, occurrence of the Defect had become so widespread that it was reported in an article in the online technology journal Ars Technica. The article, titled "SanDisk Extreme SSDs keep abruptly failing—firmware fix for only some promised," stated that "[c]omplaints go back at least four months, and SanDisk told Ars today that a firmware fix is coming "soon." However, SanDisk only confirmed a firmware update for the 4TB models, despite an Ars staffer and online users reporting issues with 2TB drives."

23.   Notably, Ars Technica asserted that the Defect was more widespread than Defendants were willing to admit to, stating that "Ars saw two 2TB units become unreadable, but SanDisk only confirms 4TB troubles."[8] Ars Technica noted "online discussions filled with panicked and disappointed users detailing experiences with recently purchased Extreme V2 and Extreme Pro V2 portable SSDs." *Id.*

24.   Ars Technica further noted Defendants' failure to Defendants' failure to adequately respond to complaints regarding the Defect, noting "little public response from SanDisk, which has mostly referred online users to open a support ticket with SanDisk's technical support team. Questions about refunds have been left unanswered. *Id.* The article further stated that:

---

[8] https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/ (last visited on September 11, 2023).

CLASS ACTION COMPLAINT

> SanDisk's minimal response thus far is especially disappointing considering the popularity of SanDisk's Extreme portable SSDs. Many tech publications (including Ars in 2020) have recommended the drive. Its rugged build particularly appeals to users who don't want physical issues resulting in data loss. Turns out, it wasn't just drops and splashes of water they had to worry about.

*Id.* Despite these complaints, Defendants continued to market and sell the Defective Drives.

**Defendants' Firmware Fix Fails to Fix The Problem**

25.     Responding to numerous complaints regarding the Defective Drives, in late May 2023, Defendants issued a firmware update (the "Firmware Update") that provided, at best, a limited response to the Defect. Defendants specified the limited scope of the Firmware Update, noting that it was for the SanDisk Extreme Portable 4TB (SDSSDE61-4T00), the SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00), the SanDisk Extreme Pro 2TB (SDSSDE81-2T00); the SanDisk Extreme Pro 1TB (SDSSDE81-1T00); and the WD My Passport 4TB (WDBAGF0040BGY). In announcing the Firmware Update, Defendants acknowledged that "[w]e have identified a firmware issue that can cause SanDisk Extreme Portable SSD V2, SanDisk Extreme Pro Portable SSD V2, and WD My Passport SSD products to unexpectedly disconnect from a computer."[9]

26.     In addition to the fact that the Firmware Update was not designed to address the Defect in all of the SSDs manifesting the Defect, the Firmware Update does not appear to have effectively fixed the Defect in even the intended drives. An August 7, 2023, article published on TheVerge.com details the failure of a "*supposedly safe replacement* that Western Digital recently sent after his original *wiped his data all by itself* supposedly safe replacement" (emphasis in original).[10] The article published on The Verge also noted that a "Reddit search suggests we may

---

[9] https://support-en.wd.com/app/firmwareupdate, last visited on September 12, 2023.
[10] https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued, last visited on September 12, 2023.

CLASS ACTION COMPLAINT

not be the only ones who've already lost data again." *Id.* The article highlighted Defendants' failure to adequately address the Defect, first noting that while "'[l]ost' is not always 'gone' when it comes to data. But data recovery services can be expensive, and Western Digital never offered [the purchaser of the Defective Drive] any the first time it left him out to dry." *Id.* The article further stated that:

> . . . it feels like WD has been trying to sweep this under the rug while it tries to offload its remaining inventory at a deep discount — they're still 66 percent off at Amazon, for example. As far as I'm aware, WD has yet to even acknowledge the possibility of massive data loss. Here, it merely says that the drives have a "firmware issue" where they might "unexpectedly disconnect from a computer." Doesn't sound all that urgent?

*Id.* Defendants' publicizing of the Firmware Update, while failing to disclose that the Defect has not been adequately addressed, furthers the harm suffered by Class Members and increases the ill-gotten gains Defendants are making from the sale of Defective Drives.

## CLASS ACTION ALLEGATIONS

27. Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff asserts common law claims, as more fully alleged hereinafter, on behalf of the following Nationwide Class. In addition, Plaintiff Jackson asserts claims on behalf of a Nationwide Class, defined as follows and, in the alternative, on behalf of a class of Texas consumers, defined as follow:

**Nationwide Class**: All residents of the United States who purchased one or more of the Defective Drives.

**Texas Class**: All residents of the state of Texas who purchased one or more of the Defective Drives.

Members of the Nationwide Class and the Texas Class are referred to herein collectively as "Class Members" or "Class."

28. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors,

9

CLASS ACTION COMPLAINT

subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

30.     **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time but the Defective Drives are very popular and collectively, Defendants are among the world's largest sellers of data storage products such as SSDs. Ultimately, members of the Class will be readily identified through Defendant's records.

31.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a)      Whether Defendants knew of the defect at the time they manufactured, marketed, and sold the Defective Drives;

b)      Whether Defendants failed to take adequate steps to prevent the Defect;

c)      Whether Defendants failed to timely notify Class Members of the Defect;

d)      Whether Defendants engaged in unfair, unlawful, or deceptive practices by manufacturing, marketing, and selling the Defective Drives;

e)      Whether Defendants violated the consumer protection statutes applicable to Plaintiff and Class Members;

f)      Whether Defendants' conduct described herein breached applicable warranties;

g)      Whether Defendants should retain the money paid by Plaintiff and each of the Class Members for the Defective Drives;

h)      Whether Plaintiff and the Class Members are entitled to damages as a result of Defendants' wrongful conduct;

i)      Whether Plaintiff and the Class Members are entitled to restitution as a

10

CLASS ACTION COMPLAINT

result of Defendants' wrongful conduct;

j)     What equitable relief is appropriate to redress Defendants' wrongful conduct; and

k)     What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Class Members.

32.    **Typicality**: Plaintiff's claims are typical of the claims of each of the Class Members. Plaintiff and the Class Members sustained damages as a result of Defendants' uniform wrongful conduct during transactions with them.

33.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

34.    **Separateness**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class.

35.    **Class-wide Applicability**: This case is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Plaintiff and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

CLASS ACTION COMPLAINT

36.    **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendants. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## CAUSES OF ACTION

### COUNT I
### Breach of the Implied Warranty of Merchantability

37.    Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

38.    Plaintiff brings this claim on behalf of himself and the Class.

39.    The Defective Drives are "consumer goods" and Plaintiff and Class Members are "buyers" within the meaning of California Civil Code § 1791. Defendants are also each a "manufacturer" under California Civil Code § 1791.

40.    Every sale of consumer goods is accompanied by a manufacturer's implied warranty that the goods are merchantable within the meaning of California Civil Code § 1791.1(a).

41.    Defendants impliedly warranted to Plaintiff and Class that the Defective Drives were "merchantable" within the meaning of California Civil Code §§ 1791 and 1792.

CLASS ACTION COMPLAINT

42.     The implied warranty of merchantability included with each sale of a Defective Drive means that Defendants warranted that each item (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Defective Drives would be used; and (c) conformed to Defendants' promises or affirmations of fact.

43.     This implied warranty included, *inter alia*, a warranty that the Defective Drives manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable; and a warranty that the Defective Drives would be fit for their intended use.

44.     Contrary to the applicable implied warranties, the Defective Drives were, at the time of sale and thereafter, defective and not fit for their ordinary and intended purpose in that they posed a significant risk of catastrophic failure and data loss.

45.     The Defect at the point of sale or lease exists without warning to Plaintiff and the Class.

46.     Plaintiffs and Class were intended third-party beneficiaries of the contracts for sale of the Defective Drives from Defendants to their agents (*e.g.*, retail sellers) who ultimately sold the Defective Drives to Plaintiff and Class Members. Defendants, which manufacture and market the Defective Drives, knew that Plaintiffs and the Class Members were end-users of the Defective Drives, and brought itself into privity with Plaintiffs and the Class who relied upon representations made by Defendants as alleged herein.

47.     Defendants' actions have deprived Plaintiff and the Class of the benefit of their bargain and have caused the Defective Drives to be worth less than what Plaintiffs and the Class paid for them.

48.     Any attempt by Defendants limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code §§ 1790.1, 1792.3, and 1793.

## COUNT III
**Breach of Express Warranties Under the Song-Beverly Consumer Warranty Act**

CLASS ACTION COMPLAINT

49.     Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

50.     Plaintiff brings this claim on behalf of himself and the Class.

51.     The Defective Drives are "consumer goods" under California Civil Code § 1791(a).

52.     Defendants are and were at all relevant times each a "manufacturer" of the Defective Drives California Civil Code § 1791(j).

53.     Plaintiff and the Class bought the Defective Drives designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Defendants.

54.     Defendants expressly warranted the Defective Drives against defects within the meaning of California Civil Code §§ 1791.2 and 1793.2.

55.     As described above, the Defective Drives are defective. The Defect impairs the use and value of the Defective Drives to reasonable consumers, Plaintiff and the Class.

56.     Defendants knew of the Defect when they expressly warranted the Defective Drives, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Plaintiff and Class that the Systems were defective, and induced Plaintiff and the Class to purchase the Defective Drives under false and/or fraudulent pretenses.

57.     Defendants are obligated, under the terms of the express warranties accompanying the Defective Drives and pursuant to California Civil Code §§ 1793.2 and 1795.4 to repair and/or replace the Defective Drives at no cost to Plaintiff and the Class.

58.     Defendants breached their express warranties by supplying the Defective Drives to Plaintiff and the Class.

59.     As detailed above, Defendants have been on notice of the Defect and of their breach of their express written warranties from various sources, including Plaintiff.

60.     Any express warranties promising to repair and/or correct any defects fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the Class

CLASS ACTION COMPLAINT

whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

61.     Accordingly, recovery by Plaintiff and the Class is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

62.     Any attempt by Defendants to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code § 1790.1.

63.     As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff and the Class received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

64.     Pursuant to California Civil Code §§ 1794 and 1795.4, Plaintiff and the Class are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## COUNT III
### Unjust Enrichment

65.     Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

66.     Plaintiff brings this claim individually and on behalf of the Class against Defendants.

67.     By obtaining and retaining revenue derived from the sale of Defective Drives to Plaintiff and the Class, Defendants have been unjustly enriched. Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that the Defective Drives are defective and pose a significant risk of catastrophic failure and/or data loss, rendering the Defective Drives unfit for their intended use and thus unfit for sale. Defendants' misrepresentations and/or material omissions caused injuries to Plaintiff and the Class Members because they would not have purchased the Defective Drives if the true facts were known.

CLASS ACTION COMPLAINT

68.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**Unlawful, Unfair and Fraudulent Business Practices,**
**California Business and Professions Code § 17200,** *et seq.*

69.     Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

70.     Plaintiff brings this claim on behalf of himself and the Class.

71.     Defendants' practices as alleged in this complaint constitute unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

72.     Defendant committed unlawful, fraudulent and/or unfair business practices in violation of the UCL because it, among other things: (a) knew or should have known that its Defective Drives contained a defect; (b) knew or should have known Plaintiff Class Members could not learn or discover the Defect; (c) failed to disclose the Defect; and (d) engaged and continues to engage in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class.

73.     Among other things, Defendants: (a) failed to disclose and/or concealed from Plaintiff and Class Members at the time of sale that the Defective Drives contained a significant Defect as detailed herein; and (b) failed to repair, replace, or recall the Defective Drives. Because the Defect is not observable, reasonable Plaintiff and Class Members were deceived into purchasing Defective Drives.

74.     Plaintiff and Class Members have suffered injury in fact as a result of Defendants' unlawful, unfair, or fraudulent practices, in that, among other things: (a) they would not have purchased the Defective Drives; (b) they have been deprived of making an informed decision about

CLASS ACTION COMPLAINT

the Defective Drives they purchased; and (c) they would not have entrusted their data to the Defective Drives.

75.   Having exclusive knowledge regarding the Defect, Defendants had a duty to disclose the Defect, particularly in light of the fact that the Defect poses risks of economic losses to Plaintiff and the Class Members.

76.   Plaintiff and the Class Members reasonably expected that Defendants would disclose the existence of the Defect to consumers and the public, and reasonably expected that Defendants would not sell a product that was defective and/or that failed to provide consistent, reliable, and dependable storage. This information is and was material to Plaintiff and Class Members.

77.   Defendants, at all times relevant, knew or should have known that Plaintiff and Class Members did not know of, or could not have reasonably discovered, the risks related to the Defect.

78.   By concealing the existence of the Defect, Defendants engaged in actionable, fraudulent conduct within the meaning of the UCL.

79.   Had Plaintiff and the Class Members known that the Defective Drives were defective, they would not have purchased them. In addition, Plaintiff and the Class Members have lost the benefit of their bargain as the Defective Drives they paid for are not worth the price paid due to their defective condition.

80.   Defendants' business acts and practices alleged herein are unfair within the meaning of the UCL. Specifically, by failing to disclose and actively concealing the existence of the Defect in the Defective Drives, Defendants have engaged in unfair conduct within the meaning of the UCL.

81.   Defendants' misconduct is unfair within the meaning of the UCL: it offends established policy and/or is immoral, unethical, unscrupulous, and substantially injurious to consumers; its utility, if any, is outweighed by the gravity of the consequences to Plaintiff and the Class; and it undermines or violates the stated policies underlying the California Consumers Legal

CLASS ACTION COMPLAINT

Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), which seeks to protect consumers against unfair and sharp business practices and promote a basic level of honesty and reliability in the marketplace, and thus provides a sufficient predicate for Plaintiffs' aforesaid claims for unfair business practices.

82. Defendants committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates the CLRA and the FAL.

83. Plaintiffs and the Class have suffered damages as a result of Defendants' misconduct. Defendants' unlawful, unfair, and fraudulent business acts and practices continue through the date of this filing.

84. The above-described unfair, unlawful, and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class and the public in that Defendant has systematically perpetrated and continues to perpetrate the unfair, unlawful, and fraudulent conduct upon members of the public by engaging in the conduct described herein.

85. Under the UCL, Plaintiff and Class request that Defendants be enjoined from engaging in business practices that constitute a violation of the UCL and other acts prohibited by law. Plaintiffs and Class Members further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in California Business and Professions Code § 17203 and for such other relief as set forth herein.

**<u>COUNT V</u>**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(Injunctive Relief Only)**

86. Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

CLASS ACTION COMPLAINT

87.     Plaintiff brings this claim individually and on behalf of the Class against Defendants.

88.     Plaintiff and the Class are consumers within the meaning of Cal. Civ. Code § 1761(d).

89.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ."

90.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

91.     Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

92.     Defendants violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally and misleadingly representing that the Defective Drives are dependable and functional, a fact that was material to Plaintiff and reasonable consumers.

93.     Defendants' misrepresentations and omissions deceived, and have a tendency and ability to deceive, reasonable consumers and the general public.

94.     Defendants have exclusive or superior knowledge of the cause of the Defect and its presence on the Defective Drives, which was not known to Plaintiff or the Class.

95.     Plaintiff and the Class have suffered harm as a result of these violations of the CLRA because they have paid monies for Defective Drives that they otherwise would not have incurred or paid. Had Plaintiff and the Class known that the Drives were fatally defective and had a significant risk of catastrophic failure and/or data loss, they would not have purchased the Defective Drives.

96.     Plaintiff, on behalf of himself and all other members the Class, seeks an injunction prohibiting Defendants from continuing their unlawful practices in violation of the CLRA.

97.     On September 13, 2023, Plaintiff sent notice of the Defect to Defendants, informing Defendants of his intention to seek damages under California Civil Code § 1750 in the absence of

CLASS ACTION COMPLAINT

full restitution. The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, if Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendants' violations of the CLRA.

**COUNT VI**
**Violation of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

98.     Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

99.     Plaintiff brings this claim individually and on behalf of the Class against Defendants.

100.     Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive the Class and the public. As described above, and throughout this Complaint, Defendants misrepresented that their Drives were dependable and functional SSDs. Such representations are not true because the Drives have an outsized risk of catastrophic failure and/or data loss.

101.     Defendants disseminated uniform advertising regarding the Defective Drives. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of California's False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL"). Such advertisements were intended to, and likely did, deceive the consumers and the public for the reasons detailed herein.

102.     The false, misleading, and deceptive advertising disseminated by Defendants continues to have a likelihood to deceive in that Defendants continue to misrepresent, without

CLASS ACTION COMPLAINT

qualification, that the Defective Drives are dependable, functional, and fit for their ordinary purpose, as data storage devices.

103.    In making and disseminating these statements, Defendants knew, or should have known, their advertisements were untrue and misleading and thus in violation of California law. Defendants know that the Defective Drives are defective, yet failed, and continue to fail, to disclose this fact to consumers.

104.    Plaintiff and the Class purchased the Defective Drives based on Defendants' misrepresentations and omissions.

105.    Defendants' misrepresentations and non-disclosures of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of the FAL.

106.    As a result of Defendants' wrongful conduct, Plaintiff and the Class lost money in an amount to be proven at trial. Plaintiff and the Class are therefore entitled to restitution as appropriate for this cause of action.

107.    Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and other appropriate equitable relief.

## COUNT VII
### Violations of the Deceptive Trade Practices Act – Consumer Protection Act
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)
### (On behalf of Plaintiff Jackson and the Texas Subclass)

108.    Plaintiff Jackson realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

103.    Plaintiff Jackson brings this claim on behalf of himself and the Texas Subclass.

104.    Plaintiff and the Texas Subclass are individuals, partnerships, or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25

CLASS ACTION COMPLAINT

million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers," pursuant to Texas Business and Commercial Code § 17.45(4). Defendants are each a "person" within the meaning of Texas Business and Commercial Code § 17.45(3).

105.    Defendants are each engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas Business and Commercial Code § 17.46(a).

106.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means an act or practice which, to a consumers detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

107.    In the course of their business, Defendants knew that the Defective Drives were defectively designed or manufactured, were subject to catastrophic failure, and/or data loss, and were not suitable for their intended use. Yet, Defendants concealed and suppressed material facts – the Defect – concerning the Defective Drives and its related risks.

108.    Defendants thus violated the Texas DTPA by, at minimum, representing that the Defective Drives have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective are of a particular standard and quality when they are not; advertising the Defective Drives with the intent not to sell them as advertised; and omitting material facts in describing the Defective Drives concealing their Defect.

109.    Defendants engaged in misleading, false, unfair, and deceptive acts or practices that violated the Texas DTPA by failing to disclose and actively concealing the Defect.

110.    Defendants owed Plaintiff and the Texas Subclass Members a duty to disclose the existence of the Defect because:

      a)    Defendants were in a superior position to know the true state of facts about the Defect;

      b)    Plaintiff and the Texas Subclass Members could not reasonably have been expected to learn or discover that the Defective Drives were defective until

CLASS ACTION COMPLAINT

manifestation of the Defect;

c)      Defendants knew that Plaintiff and the Texas Subclass Members could not reasonably have been expected to learn about or discover the Defect; and

d)      Defendants actively concealed the Defect, its causes, and resulting effects, from Plaintiff and Texas Subclass Members by asserting that, *inter alia*, the Firmware Update would address and remedy the Defect.

111.    Whether or not the Defective Drives work properly is a fact a reasonable consumer would consider important in deciding to purchase or lease them. When Plaintiff and the Texas Subclass Members bought or leased the Defective Drives for personal, family, or household purposes, they reasonably expected they would not be defective.

112.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety and reliability of the Defective Drives.

113.    Plaintiff and the Texas Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of, and failure to disclose, material information – the Defect. Plaintiff and the Texas Subclass Members who purchased the Defective Drives would not have purchased them at all if the Defect had been disclosed or would have paid significantly less for them. Plaintiff and the Texas Subclass Members also suffered diminished value, as well as lost or diminished use, of their Defective Drives.

114.    The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and the Texas Subclass Members, as it would have been to all reasonable consumers.

115.    Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

116.    Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

117.    Pursuant to Texas Business and Commercial Code § 17.50, Plaintiff and the Texas Subclass seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive

CLASS ACTION COMPLAINT

damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

118. On September 13, 2023, Plaintiff Jackson sent a letter to Defendants complying with Texas Business and Commercial Code § 17.505(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a) For an order: certifying the nationwide Class and the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Nationwide Class and Texas Subclass; and appointing Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and Texas Subclass;

b) For an order declaring the Defendants' conduct violates the statutes referenced herein;

c) For an order finding in favor of Plaintiff, the Nationwide Class, and the Texas Subclass on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper; and

h) For an order awarding reasonable attorneys' fees and expenses and costs of suit to Plaintiff, and the Nationwide Class, and the Texas Subclass.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 12, 2023                    Respectfully submitted,

24

CLASS ACTION COMPLAINT

By:  /s/ STEPHEN R. BASSER
STEPHEN R. BASSER

BARRACK RODOS & BACINE
Stephen R. Basser
Samuel M. Ward
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile:  (619) 230-1874
E-mail: sbasser@barrack.com
sward@barrack.com

EMERSON FIRM, PLLC
John G. Emerson*
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
E-mail:  jemerson@emersonfirm.com

* Application for admission *pro hac vice* to
be filed

CLASS ACTION COMPLAINT